[Docket Nos. 27, 30, 36, & 37]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| PATRICIA SNEAD,<br><br>    Plaintiff,<br><br> v.<br><br>BALLY'S CASINO, BALLY'S CASINO ATLANTIC CITY HOTEL, JOHNNY ROCKETS, ATLANTIC CITY, *et al.*,<br><br>    Defendants. | Civil No. 21-16875 (RMB/MJS)<br><br><br>**OPINION** |

**APPEARANCES:**

AIELLO HARRIS MARTH TUNNERO & SCHIFFMAN PC
By: Evan Mason Harris, Esq.
501 Watchung Avenue
Watchung, New Jersey 07060

*Attorneys for Plaintiff Patricia Snead*

BIRCHMEIER & POWELL, LLC
By:  Erin R. Thompson, Esq.
1891 State Highway 50
PO Box 582
Tuckahoe, New Jersey 08250

*Attorneys for Defendant Atlantic City*

SWEENEY & SHEEHAN, P.C.
By:  Brian M. Dib, Esq. & Giacomo F. Gattuso, Esq.
Sentry Office Plaza
216 Haddon Avenue
Suite 300
Westmont, New Jersey 08108

*Attorneys for Defendant Bally's Park Place LLC, improperly pled as Bally's Casino & Bally's Casino Atlantic City Hotel*

**RENÉE MARIE BUMB, Chief United States District Judge:**

Stretching over four miles with access to the beach, hotels, shops, and casinos, Defendant Atlantic City's Boardwalk attracts pleasure seekers and visitors from around the world. Plaintiff Patricia Snead (Snead) was one of those pleasure seekers. But rather than enjoying a day at the beach, she tripped and fell over a raised board on the Boardwalk located just outside the exit to Defendant Bally's Park Place LLC's (Bally's) hotel and casino. Snead alleges she suffered serious injuries to her shoulder and arm when she fell, and now sues Atlantic City and Bally's seeking to hold them liable for her injuries.

Both Atlantic City and Bally's move for summary judgment. The City argues New Jersey's Tort Claims Act immunizes it from any tort liability because Snead has not overcome her heavy burden to strip the City of its immunity under the Act. This Court agrees. Snead has not shown that the raised board she tripped over constituted a dangerous condition, or that Atlantic City had notice of the raised board before her fall, or that the City's conduct to safeguard against raised boards was palpably unreasonable. Bally's, too, asks this Court to dismiss Snead's claims against it, contending it did not owe her a duty of care to maintain the Boardwalk. The Court agrees. All agree that Atlantic City owns and controls the raised board that Snead tripped over, and has taken on the exclusive responsibility to maintain the Boardwalk. Accordingly, this Court finds Bally's did not owe Snead a duty of care to maintain and repair the Boardwalk.

For the below reasons, this Court **GRANTS** Atlantic City's summary judgment motion (Docket No. 27), **GRANTS** Bally's summary judgment motion (Docket No. 30), and **DENIES** Snead's cross-motions for summary judgment (Docket Nos. 36-37).

## I. BACKGROUND

### A. Snead's Fall

Snead and her family were vacationing in Atlantic City and staying at Bally's.  [Bally's Statement of Facts (Bally's SOMF) ¶ 3 (Docket No. 30).]  While exiting Bally's to head to the beach, Snead immediately tripped and fell over an "upraised" board on the Boardwalk located just outside the casino's exit.  [Snead's Counter Statement of Facts I (Snead SOMF I) ¶ 3 (Docket No. 33-1).]  Snead claims she injured her shoulder and arm when she fell.  [*Id.*]

Snead estimates the raised board to be about two inches higher than the other boards on the Boardwalk.  [*Id.* ¶¶ 4-6.]  The raised board is depicted below, circled in red:



[Bally's SOMF ¶ 5.]  Atlantic City owns and controls the portion of the Boardwalk—circled in red— where Snead tripped and fell.  [*Id.* ¶¶ 10, 19; *see also* Snead's SOMF ¶ 25.]   Bally's owns the plank abutting the raised board, shown below outlined in green:



[Bally's SOMF ¶ 19.]

After learning of Snead's fall, members of Bally's facilities team fastened the raised board "for public safety reasons."  [Bally's SOMF ¶ 21; Snead's SOMF ¶ 34; *see also* Bally's Response to Snead's SOMF (Bally's Resp.) ¶ 32 (Docket No. 38).]  According to Bally's former Director of Facilities, Bally's repaired the raised board because it did not want to wait for Atlantic City to repair it.  [Bally's SOMF ¶ 21; *see also* Bally's Resp. ¶ 34.]

### B. Atlantic City's Boardwalk Inspection Program

Atlantic City owns, controls, inspects, and repairs the Boardwalk.  [Bally's SOMF ¶¶ 6-7.]  The City employs a "Boardwalk Inspector" who patrols the Boardwalk looking for any defects.  [*Id.*]  It also employs carpenters assigned to various sections of the Boardwalk to repair and maintain it.  [*Id.*]  In addition, the City's police officers and other employees report any defects on the Boardwalk.  [*Id.*]

One Boardwalk Inspector, Dennis McReynolds (McReynolds), patrols the Boardwalk five days a week looking for "tripping hazards."  [*Id.* ¶¶ 8-9.]  He inspects the entire Boardwalk each day by foot and vehicle for about six to seven hours.  [*Id.* ¶ 8; *see also* Atlantic City

Statement of Facts (ACSOMF) ¶ 7 (Docket No. 27-1).]   For his walking inspections, McReynolds walks a one-mile section and rotates the sections he walks daily.   [*Id.*] McReynolds considers a board "sticking up 1" [to] 1 ½"" to be a tripping hazard that he would repair.  [Snead's Counter Statement of Facts II (Snead SOMF II) ¶ 24 (Docket No. 35-1).]

McReynolds confirmed that Atlantic City owns the raised board that Snead tripped over.  [*Id.* ¶ 10.]  He also confirmed that Atlantic City would have been responsible to repair it. [*Id.* ¶ 11.]  McReynolds inspects the section of the Boardwalk where Snead fell weekly—once by foot and at least three times by vehicle.  [*Id.* ¶ 12.]  McReynolds' inspection records reveal that he inspected that section of Boardwalk about a week before Snead's fall.  [Bally's SOMF ¶¶ 15-16; *see also* Snead SOMF II ¶¶ 22-26.]

## C. Snead's Liability Expert

Snead retained an engineer, George F. Gianforcaro, PE, PP, (Gianforcaro), to serve as her liability expert.  [Certif. of Evan Mason Harris (Harris Certif.) ¶ 4, Ex. C (Gianforcaro's Expert Report) (Docket No. 35-2).]  Gianforcaro reviewed, among other things, photographs of the raised board, an incident report prepared by Bally's, and multiple "reference documents" such as Atlantic City's Code of Ordinances, the International Building Code, the State of New Jersey Uniform Construction Code, and the like.  [Gianforcaro's Expert Report pp. 2-15.]  Based on his review of the pictures, Gianforcaro determined that the screws anchoring the raised board were six inches from the board's end.  [*Id.* at 2.]  In comparison, Gianforcaro found from the pictures that other boards on the Boardwalk were anchored with screws one and one-half inch from the boards' ends.  [*Id.* at 3.]  According to Gianforcaro, anchoring boards with screws closer to the board's ends "is the correct method of anchoring"

because it "prevents the ends of the [b]oards from rising up to a [r]aised condition." [*Id.*]

Moreover, Gianforcaro determined that the raised board to be an "ongoing" condition that likely lasted for a period of one to two years before Snead's fall. [*Id.* at 16, 20, 21-22.] In addition, Gianforcaro concluded that the raised board created an uneven walking surface, and thus that section of the Boardwalk did not comply with Atlantic City's ordinances and various construction codes. [*Id.* at 15-18.] Likewise, Gianforcaro concluded that the anchoring of the raised board was improper, and as such, the board did not comply with the City's ordinances and construction codes. [*Id.*]

### D. Snead's Lawsuit

Following her fall, Snead sued Atlantic City and Bally's in New Jersey state court claiming both were negligent by allowing a dangerous condition on the Boardwalk and not repairing it. [Notice of Removal ¶ 14, Ex. A (Snead's Complaint) (Docket No. 1-3).] Snead seeks a million dollars in damages for the injuries she sustained from her fall. [Notice of Removal ¶ 17.] Bally's removed the case to this Court based on diversity jurisdiction. [*Id.* ¶ 7.] Both Bally's and Atlantic City now move for summary judgment. [Docket Nos. 27, 30.]

## II. THE PARTIES' SUMMARY JUDGMENT MOTIONS

### A. Atlantic City's Summary Judgment Motion

Atlantic City moves for summary judgment, arguing New Jersey's Tort Claims Act (TCA) immunizes it from any liability to Snead. [Atlantic City Mem. of Law in Support of Summ. J. (Atlantic City Br.) 5-12 (Docket No. 27-1).] The City contends that the raised board that Snead tripped over was not a "dangerous condition" worthy enough to strip the City of its immunity under the TCA. [*Id.* at 5-8.] And the City argues that Snead has not shown the municipality had actual or constructive notice of the raised board before her fall—another

critical requirement to defeat the City's entitlement to immunity.  [*Id.* at 9.]  Finally, the City asserts that even if the raised board were a dangerous condition and the City had notice of it, Snead has failed to show that the municipality's conduct was palpably unreasonable, and so, Snead's claims against the municipality fail.  [*Id.* at 11-12.]

Snead opposes Atlantic City's summary judgment motion, and cross-moves for summary judgment on whether the board she tripped over constituted a dangerous condition under the TCA.  [Snead Mem. of Law in Opp'n to Atlantic City Summ. J. Mot. and in Support of Cross Mot. for Summ. J. (Snead Br. I) 12-25 (Docket No. 35-1).]  Relying on McReynolds' testimony, Snead argues the municipality has admitted that the raised board she tripped over constituted a dangerous condition under the TCA because it was a tripping hazard.  [*Id.* at 15.]  In addition, Snead points to Gianforcaro's conclusions that the section of the Boardwalk where Snead fell was not properly constructed.  [*Id.*]  Snead also contends that the two-inch height of the raised board—by itself—is a dangerous condition under the TCA.  [*Id.* at 17.]

Turning to notice, Snead argues that Atlantic City had actual notice of the raised board "based on the fact its boards[,] one of which raised up from its faulty anchoring[,] were not fastened down properly."  [*Id.* at 18.]  Snead, again relying on Gianforcaro, contends that City had constructive notice of the raised board based on the expert's conclusions that the raised board "was present for a long time and 1-2 years" before Snead fell.  [*Id.*]  Snead asserts that the City could have discovered the defect with minimal effort.  [*Id.* at 19.]

Finally, Snead argues the jury should resolve whether Atlantic City's conduct was palpably unreasonable.  [*Id.* at 21-25.]  Snead faults Atlantic City because McReynolds routinely patrolled the area where Snead fell and he failed to discover the raised board.  [*Id.*

at 22.]  Relying on Gianforcaro, Snead faults the City for not taking the proper time to repair defective boards, or making proper repairs to the Boardwalk's anchoring that holds the boards in place.  [*Id.*]  Snead contends those failures rendered Atlantic City's conduct palpably unreasonable.  [*Id.* at 22, 24-25.]

## B. Bally's Summary Judgment Motion

Bally's, too, moves for summary judgment, arguing Snead's claims against it fail because commercial proprietors—like Bally's here—do not have a duty to maintain the Boardwalk.  [Bally's Mem. of Law in Support of Summ. J. (Bally's Br.) 23-28 (Docket No. 30).]  Pointing to the New Jersey Appellate Division's decision in *Pote v. City of Atlantic City*, 986 A.2d 680 (N.J. Super. Ct. App. Div. 2010), Bally's argues New Jersey courts do not impose a duty on commercial proprietors to repair the Boardwalk because Atlantic City owns it and is responsible for repairing it.  [*Id.* at 27.]  Bally's contends that all agree that Atlantic City owns the raised board that Snead tripped over, and Snead cannot point to any evidence that Bally's created the tripping hazard.  [*Id.* at 28.]  Therefore, Bally's asks this Court to dismiss Snead's claims against it.  [*Id.* at 29.]

Snead opposes Bally's motion, and cross-moves for summary judgment asking this Court to impose a duty on Bally's to repair or prevent tripping hazards on the Boardwalk like the one here.  [Snead Mem. of Law in Opp'n to Bally's Summ. J. Mot. and in Support of Cross Mot. for Summ. J. (Snead Br. II) 12-20 (Docket No. 33-1).]  Snead argues *Pote* is inapt because, among other reasons, that case did not address a defect on the Boardwalk within a few feet to the commercial proprietor's property.  [*Id.* at 16.]  Snead argues that imposing a duty on Bally's satisfies fairness because:  (1) Bally's benefits from its patrons' use of the Boardwalk to gain access to the hotel and casino; (2) inspecting the area where Snead fell

8

would not be burdensome; and (3) Bally's facilities department fastened the raised board after Snead fell, and thus Bally's could have fixed the defect before anyone hurt themself.   [*Id.* at 15-17.]  Likewise, Snead asserts a reasonable jury could find that Bally's patrons use of the Boardwalk to enter the facility likely contributed to the raised board, and therefore, Bally's should have an obligation to repair defects on the Boardwalk.   [*Id.* at 17.]  Lastly, Snead equates the Boardwalk to a sidewalk, and argues New Jersey courts impose a duty of care on commercial proprietors to maintain sidewalks abutting their property.  [Snead Reply Mem. of Law (Snead Reply Br.) 2 (Docket No. 42).]  Seeing no difference between a sidewalk and the Boardwalk, Snead contends this Court should deny Bally's summary judgment motion and rule Bally's owed her a duty of care.

## III.  SUMMARY JUDGMENT STANDARD

Courts will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012).  A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party.  *Id.*

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable inferences and doubts should be resolved in favor of the nonmoving party.  *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).  But a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).  Moreover, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by

the record [so] that no reasonable jury" could believe them.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  In the face of such evidence, summary judgment is still appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The movant has the initial burden of showing through the pleadings, deposition testimony, answers to interrogatories, admissions on file, and any affidavits that the nonmovant has failed to establish one or more essential elements of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party carries its burden, the burden then shifts to the nonmovant who must establish that summary judgment is inappropriate.  *Matsushita*, 475 U.S. at 586.  But if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial,' then summary judgment is appropriate for the moving party."  *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (alterations in original) (quoting *Celotex*, 477 U.S. at 322).

In the face of a properly supported summary judgment motion, the nonmovant's burden is rigorous:  the party "must point to concrete evidence in the record"—mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment.  *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *accord Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010) ("[S]peculation and conjecture may not defeat summary judgment." (citing *Acumed LLC. v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009))).  Moreover, "the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial"; the evidence need not

be in admissible form at the time of summary judgment.  *FOP v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016).

## IV. ATLANTIC CITY'S IMMUNITY UNDER THE TCA

By the TCA, public entities are presumptively immune from tort liability unless the statute specifically calls for liability.  N.J. Stat. Ann. § 59:2-1(a); *see also Kahrar v. Borough of Wallington*, 791 A.2d 197, 201 (N.J. 2002).   Under the TCA, "immunity . . . is the general rule and liability is the exception." *Stewart v. N.J. Tpk. Auth. / Garden State Parkway*, 268 A.3d 346, 356 (N.J. 2022) (omission in original) (quoting *Coyne v. State, Dep't of Transp.*, 867 A.2d 1159, 1163 (N.J. 2005)).  Thus, "[a] public entity is only liable for an injury arising 'out of an act or omission of the public entity or a public employee or any other person' as provided by the TCA." *Polzo v. Cty. of Essex*, 35 A.3d 653, 661 (N.J. 2012) (quoting N.J. Stat. Ann. § 59:2-1(a)).

To strip a public entity of its immunity for tort liability under the TCA, the plaintiff must show:  (1) the public entity's "property was in dangerous condition at the time of injury," (2) "the injury was proximately caused by the dangerous condition," (3) "the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred," and (4) either "a negligent or wrongful act or omission of [a public] employee . . . created the dangerous condition" or the "public entity had actual or constructive notice of the dangerous condition[.]"  N.J. Stat. Ann. § 59:4-2.  On top of that showing, a plaintiff must show that the public entity's conduct was "palpably unreasonable." *Stewart*, 268 A.3d at 354 (quoting *Vincitore ex rel. Vincitore v. N.J. Sports & Exposition Auth.*, 777 A.2d 9, 12 (N.J. 2001)).  "These elements are 'accretive; if one or more of the elements is not satisfied, a plaintiff's claim against a public entity alleging that such entity is liable due to the condition of public property must

11

fail.'" *Id.* (quoting *Polzo v. Cty. of Essex*, 960 A.2d 375, 384 (N.J. 2008)).  Indeed, the TCA's requirements are "stringent' and place a 'heavy burden' on plaintiffs seeking to establish public entity liability." *Charney v. City of Wildwood*, 732 F. Supp. 2d 448, 452-53 (D.N.J. 2010), *aff'd*, 435 F. App'x 72 (3d Cir. 2011).

### A. Snead has failed to show a dangerous condition on the Boardwalk.

Under the TCA, a dangerous condition is one "that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used."  N.J. Stat. Ann. § 59:4-1(a).  "A substantial risk is 'one that is not minor, trivial or insignificant,' and presents a more stringent burden than that of mere negligence." *Stewart*, 268 A.3d at 354 (quoting *Kolitch v. Lindedahl*, 497 A.2d 183, 187 (N.J. 1985)).   The "defect cannot be viewed in a vacuum," and courts must consider the defect "together with the anticipated use of the property."  *Atalese v. Long Beach Twp.*, 837 A.2d 1115, 1118 (N.J. Super. Ct. App. Div. 2003).  But "the mere existence of a defect is insufficient to demonstrate a dangerous condition."  *McCleary v. City of Wildwood*, 2011 WL 1630822, at *4 (D.N.J. Apr. 29, 2011) (quoting *Moody v. City of Wildwood*, 2005 WL 3693207, at *2 (N.J. Super. Ct. App. Div. Jan. 24, 2006)).

Generally, a fact finder determines whether the public entity's property is in a dangerous condition.  *Vincitore*, 777 A.3d at 11.  But "like any question of fact, this determination is subject to a preliminary assessment by the court as to whether it can reasonably be made by a jury considering the evidence."  *Charney*, 732 F. Supp. 2d at 454.  In some cases, a court must resolve the question of dangerous condition "to ensure that the 'legislatively-decreed restrictive approach to liability' [under the TCA] is enforced."  *Charney*,

435 F. App'x at 74 (quoting *Cordy v. Sherwin Williams Co.*, 975 F. Supp. 639, 643 (D.N.J. 1997)).

As this Court recognized years ago, courts typically review measurements of gaps, cracks, or other surface defects to determine whether the condition of a walkway constitutes a dangerous condition under the TCA. *McCleary*, 2011 WL 1630822, at *5 (collecting cases). Several courts have already found certain defects on Atlantic City's Boardwalk and other boardwalks did not rise to the level of a dangerous condition. *See, e.g.*, *Charney*, 732 F. Supp. at 456 (finding "one and one-half inch deep, one and one-quarter inch wide triangular hole" on boardwalk not a dangerous condition); *Mendelsohn v. City of Ocean City*, 2004 WL 2314819, at *4-6 (D.N.J. Oct. 12, 2004) (holding "nail protruding one quarter of an inch" on the boardwalk not a dangerous condition); *Clark v. City of Wildwood*, 2022 WL 3205805, at *3 (N.J. Super. Ct. App. Div. Aug. 9, 2022) ("[N]o reasonable jury could find the alleged slight change in elevation on a single board in a long stretch of boardwalk gave rise to a 'substantial risk of injury."); *Trivisano v. City of Atl. City*, 2021 WL 6013572, at *5 (N.J. Super. Ct. App. Div. Dec. 16, 2021) ("[T]he tripping threshold presented by a single bent screw on a boardwalk that is four miles long, and sixty feet wide, does not permit a determination by a reasonable factfinder that the screw created a substantial risk of injury to the anticipated users of the boardwalk[.]") (internal quotation marks omitted).

Here, the Court finds Snead has not shown the raised board she tripped over constituted a dangerous condition under the TCA. Snead mainly relies on McReynolds' deposition testimony that the raised board was a tripping hazard, Gianforcaro's opinions, and her estimations that the raised board was two inches higher than the other boards on the Boardwalk. [Snead Br. I at 14-16.] That evidence is unavailing.

To start, for reasons unknown to the Court, Atlantic City has not challenged the admissibility of Gianforcaro's expert evidence.  As presented to this Court, Gianforcaro's conclusions in his expert report are largely inadmissible net opinions and the report itself fails to comply with the Federal Rules of Civil Procedure.

First, Rule 56 requires an expert report to be sworn by the alleged expert.  Fed. R. Civ. P. 56(c)(4) (requiring affidavits or declarations to oppose summary judgment to "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").  Unsworn expert reports are inadmissible on a summary judgment motion.  *Fowle v. C&C Cola, a Div. of ITT-Cont'l Baking Co.*, 868 F.2d 59, 67 (3d Cir. 1989) (refusing to consider expert report not sworn by the alleged expert and ruling unsworn report is "not competent to be considered on a motion for summary judgment"); *see also Burrell v. Minn. Mining Mfg. Co.*, 2011 WL 5458324, at *1 n.1 (E.D. Pa. June 9, 2011) (refusing to consider plaintiff's expert report on defendant's summary judgment motion because report "was not sworn to under penalty of perjury").  Here, Snead merely annexed Gianforcaro's expert report to her counsel's certification.  [Harris Certif. ¶ 4, Ex. C.]  That is improper, and as such, the expert report is not competent evidence.  *Fowle*, 868 F.2d at 67 (concluding unsworn expert report annexed to counsel's certification did not comply with Rule 56).

Second, a court may decline to consider expert evidence on a summary judgment motion if the expert report "is not admissible."  *J&J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 368 (D.N.J. 2002).  This is so because courts can only consider admissible evidence on a summary judgment motion.  *Lopez v. Honeywell Intern., Inc.*, 2014 WL 3500326, at *9 (D.N.J. July 14, 2014) ("Only evidence which is admissible at trial may be considered

14

in ruling on a motion for summary judgment." (cleaned up) (quoting *Countryside Oil Co., Inc. v. Travelers Ins. Co.*, 928 F. Supp. 474, 482 (D.N.J. 1995))).

As presented in his expert report, Gianforcaro's conclusions are largely inadmissible net opinions.  "[A]n expert's bare conclusions, unsupported by factual evidence are an inadmissible net opinion." *Faragalla v. Otundo*, 626 F. Supp. 3d 783, 786 (D.N.J. 2022) (quoting *W. Am. Ins. Co. v. Jersey Cent. Power & Light Co.*, 2008 WL 5244232, at *5 (D.N.J. Dec. 15, 2008)).[1]  "The net opinion rule requires the expert to give the 'why and wherefore' of the opinion, rather than a mere conclusion." *Iudici v. Camisa*, 2022 WL 3998295, at *2 (D.N.J. Sept. 1, 2022) (alteration omitted) (quoting *Curtis v. Besam Grp.*, 2007 WL 3232589, at *7 (D.N.J. Oct. 31, 2007)).  Indeed, an "expert's bare conclusions are not admissible under [the fit requirement] of Rule 702 of the Federal Rules of Evidence." *H.M. ex rel. B.M. v. Haddon Heights Bd. of Educ.*, 822 F. Supp. 2d 439, 448 (D.N.J. 2011) (alteration in original) (quoting *Holman Enter. v. Fid. & Guar. Ins.*, 563 F. Supp. 2d 467, 472 n.12 (D.N.J. 2008)).

Gianforcaro's expert report is peppered with inadmissible net opinions.  For example, Gianforcaro concludes that the raised board existed one to two years before Snead's fall.  [Gianforcaro's Expert Report at 16, 20, 22.]   But Gianforacro does not support this conclusion with any facts or provide the "why and wherefore" of his conclusion, and thus his conclusion is inadmissible net opinion.  *Trivisano*, 2021 WL 6013572, at *6-7 (finding trial court properly excluded expert opinion on how long screw protruded on boardwalk because

---

[1] While the net opinion rule "is not a federal evidentiary rule and does not form a part of the *Daubert/Kumho* analysis," the rule is "merely a restatement of the well-settled principle that an expert's bare conclusions are not admissible under Rule 702 of the Federal Rules of Evidence." *Zeller v. J.C. Penney Co., Inc.*, 2008 WL 906350, at *7  n.13 (D.N.J. Mar. 31, 2008) (citation and internal quotation marks omitted); *see also Smith v. State Farm Fire & Cas. Co.*, 2023 WL 3561406, at *4 n.2 (D.N.J. May 19, 2023) ("While the net opinion rule is not part of the Federal Rules of Evidence, nor is it an explicit factor enumerated by *Daubert*, courts in this district have analyzed net opinion arguments under *Daubert*'s fit requirement, or on its own as a separate issue.").

the opinion was inadmissible net opinion since the expert's opinion "is untethered to any 'why and wherefore'" (quoting *Townsend v. Pierre*, 110 A.3d 52, 62-63 (N.J. 2015))); *see also Lopez*, 2014 WL 3500326, at *9 (disregarding plaintiff's expert report on summary judgment motion because the report contained inadmissible net opinions). Indeed, he just concludes the raised board existed for one to two years without any factual support, any analysis, or any discussion on how he reached this conclusion.

Moreover, Gianforcaro appears to conclude that the improper anchoring of the board Snead tripped over—by itself—constitutes a dangerous condition. Again, Gianforcaro found that the raised board Snead tripped over was not properly anchored since the screws securing the board were six inches from the board's ends. [Gianforcaro's Expert Report at 2-3, 17-18.] But Gianforcaro does not explain how the mere anchoring of a board on the Boardwalk in this way renders the board a dangerous condition. He has not pointed to any objective or industry standard requiring boards to be fastened the way he claims is proper (one and one-half inch from the board's ends). That the board may have been defective because of improper anchoring is not enough to show a dangerous condition. *See McCleary*, 2011 WL 1630822, at *6 (finding "the mere existence of a pavement gap is insufficient to show a 'dangerous condition'").

Equally troubling, Gianforcaro relies on inapplicable ordinances and construction codes when concluding that Atlantic City allowed a dangerous condition on the Boardwalk. For example, Gianforcaro claims Atlantic City violated its own ordinances by not properly constructing and maintaining the section of the Boardwalk where Snead fell. [Gianforcaro's Expert Report p. 16 (citing Atlantic City, N.J., Code, pt. 1, ch. 207, § 207-20 (2023)).] Yet the provision of the Code Gianforcaro relies on addresses property maintenance for

16

"abandoned, vacant, or foreclosed property." Atlantic City, N.J., Code, pt. 1, ch. 207, § 207-18 (2023).  Thus, this Court will not accept Gianforcaro's opinions to defeat Atlantic City's summary judgment motion.

Setting aside Gianforcaro's expert report, the Court finds Snead's other evidence does not establish that the raised board constituted a dangerous condition.  Indeed, Snead overstates McReynolds' deposition testimony to support her claim.  At his deposition, McReynolds testified that he considers a board "sticking up an inch and a half to two inches" to be a "tripping hazard" that he would repair.  [Harris Certif. ¶ 4, Ex. D (Tr. 34:7 to 15) (Docket No. 35-2); *see also* Snead SOMF II ¶ 24.]  Snead has not pointed to any authority suggesting that a public employee's acknowledgment that a property condition was a tripping hazard is a binding admission on the public entity that the property is in a "dangerous condition" under the TCA.  In fact, New Jersey's Appellate Division rejected a plaintiff's similar attempt to establish the TCA's dangerous condition requirement based on McReynolds' acknowledgment that a defect on the Boardwalk constituted a tripping hazard. *Trivisano*, 2021 WL 6013572, at *5-6 (refusing to find a screw on the Boardwalk protruding by three-eighths of an inch to be a dangerous condition under the TCA even though McReynolds testified that a screw protruding from the Boardwalk more than a quarter of inch to be a tripping hazard).  Indeed, several courts have found mere tripping hazards on a boardwalk do not rise to the level of dangerous condition under the TCA. *Id.*; *see also Charney*, 732 F. Supp. 2d at 450-51, 453-56 (finding hole on boardwalk not a dangerous condition even though plaintiff tripped when her foot got stuck in the hole); *McCleary*, 2011 WL 1630822, at *6 (finding surface gap on boardwalk not a dangerous condition even though plaintiff tripped over the gap).

Finally, Snead's remaining evidence—her estimation that the raised board was two inchers higher than the other boards on the Boardwalk and the photographs showing the raise board's elevation—are insufficient for a fact finder to conclude the raised board was a dangerous condition.  The two-inch elevation of the raised board "is the kind of minor defect that does not qualify as a dangerous condition under the [TCA]." *Charney*, 732 F. Supp. 2d at 456 (ruling "hole . . . measuring one and one-half inch deep, and one and one-quarter inch wide *at its largest point"* not a dangerous condition); *see also McCarthy v. Twp. of Verona*, 2001 WL 1917169, at *1-2 (N.J. Super. Ct. App. Div. Apr. 16, 2001) (finding one and one-half inch horizontal gap and one and one-quarter inch vertical height difference between concrete sidewalk slabs not a dangerous condition); *Gohel ex rel. Gohel v. Sherry*, 1998 WL 34024178, at *1 (N.J. Super. Ct. App. Div. Dec. 23, 1998) (finding two sidewalk cracks "one to two inches wide, a half inch deep and five to six inches long" were not dangerous conditions).  Indeed, "pedestrians must expect some areas of imperfection on walkway surfaces, and not every defect in a walkway surface is actionable." *Charney*, 732 F. Supp. 2d at 456.  Thus, Snead has failed to show a dangerous condition on the Boardwalk, and so, Atlantic City is entitled to summary judgment.[2]

---

[2] That said, because Atlantic City has not challenged the admissibility of Gianforcaro's opinions, this Court, in an exercise of caution, will allow Snead to file a motion for reconsideration within 14 days of this Court's order pursuant to Local Civil Rule 7.1(i) if the Court overlooked any controlling law on whether this Court can, *sua sponte*, disregard an expert report submitted in opposition to a summary judgment motion if the moving party does not challenge the admissibility of the report.  Atlantic City may file an opposition to the reconsideration motion consistent with this District's local rules.

**B. Snead has not shown that Atlantic City had notice of the raised board.**[3]

Even if Snead established that the raised board constituted a dangerous condition, she has not shown that Atlantic City had notice of it.  To strip Atlantic City of its immunity under the TCA, Snead must show the City had notice of the raised board either through actual or constructive notice.  N.J. Stat. Ann. § 59:4-2.  To show actual notice, Snead must show Atlantic City "had actual knowledge of the existence of the condition and knew or should have known of its dangerous character."  *Id.* § 59:4-3(a).  For constructive notice, Snead must show that the dangerous condition "existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character."  *Id.* § 59:4-3(b).

Here, Snead has not shown Atlantic City had either actual or constructive notice of the raised board.  Snead points to no evidence that Atlantic City had actual notice of the raised board before her fall, such as prior complaints, inspection logs, or witness observations.

Likewise, Snead has not shown that Atlantic City had constructive notice of the raised board.  To support her constructive notice argument, Snead mainly relies on Gianforcaro's opinion that the raised board existed one to two years before Snead's fall.  [Snead Br. I at 18.] Gianforcaro's conclusion is an inadmissible net opinion because he does not explain how he reached that conclusion or what facts he relied on.  "[A] net opinion alone is insufficient to sustain plaintiff's burden of establishing that the public entity was on constructive notice of a

---

[3] Snead's argument that Atlantic City loses its immunity under the TCA because the City's employees created the raised board is meritless.  [Snead Br. I at 15 (citing N.J. Stat. Ann. § 59:4-2(a)).]  Snead solely relies on Gianforcaro's opinion that the raised board was improperly anchored.  [*Id.*]  As noted above, Gianforcaro's opinions are inadmissible net opinion that the Court will not consider.  Again, the Court struggles to see how the board—by itself and without being raised—constitutes a dangerous condition under the TCA.  Besides Gianforcaro's bald conclusions, Snead points to no other evidence that Atlantic City's employees negligent conduct created the raised board, and so, Snead must show Atlantic City had notice of the raised board. *McCleary*, 2011 WL 1630822, at *6.

dangerous condition." *Polzo*, 960 A.2d at 384; *see also Trivisano*, 2021 WL 6013572, at *7-8 (finding plaintiff failed to establish constructive notice where plaintiff only offered inadmissible net opinion from expert on time the protruding screw existed on the Boardwalk); *Maslo v. City of Jersey City*, 787 A.2d 963, 965 (N.J. Super. Ct. App. Div. 2002) (finding expert's opinion that "slightly over an inch" elevation between sidewalk slabs that existed for "at least a year . . . does not equate with actual or constructive notice"). Thus, Snead's claims against Atlantic City fail for lack of notice.

Still, Snead argues that Atlantic City had notice of the raised board because of the City's Boardwalk inspection program. [Snead Br. I at 18-19.] Snead contends that if Atlantic City's employees had exercised due care, the employees could have discovered the raised board before her fall. [*Id.* at 19.] This Court has rejected a substantially similar argument. *McCleary*, 2011 WL 1630822, at *7 (rejecting plaintiff's argument that public entity's daily inspections of the boardwalk support an inference that the entity should have known about the dangerous condition). This is so because "the mere existence of an alleged dangerous condition is not constructive notice of it." *Polzo*, 960 A.2d at 382 (cleaned up) (quoting *Sims v. City of Newark*, 581 A.2d 524, 529 (N.J. Super. Ct. Law Div. 1990)).

## C. Snead has not shown Atlantic City's conduct was palpably unreasonable.

Even if Snead established that the raised board constituted a dangerous condition and Atlantic City had notice of it, Snead has not shown "the action or inaction" on Atlantic City's part to protect against the condition was "palpably unreasonable." *Kolitch*, 497 A.2d at 187. To establish palpably unreasonable behavior, a plaintiff shoulders a "steep burden" to prove "more than ordinary negligence." *Coyne*, 867 A.2d at 1166. Palpably unreasonable conduct is "behavior that is patently unacceptable under any given circumstances" such that it is

"manifest and obvious that no prudent person would approve of its course of action or inaction." *Id.* at 1166-67 (quoting *Kolitch*, 497 A.2d at 187). The palpable unreasonableness inquiry requires courts to consider what the public entity "did in the face of all of the attendant circumstances, including, of course, the extent of the known danger and what it considered to be the need for urgency." *Schwartz v. Jordan*, 767 A.2d 1008, 1010 (N.J. Super. Ct. App. Div. 2001).

Like the question of dangerous condition, the fact finder normally determines whether a public entity acted palpably unreasonable. *Trivisano*, 2021 WL 6013572, at *8. But in certain cases, courts will resolve the palpable unreasonableness inquiry. *Charney*, 732 F. Supp. 2d at 457. Indeed, "the question of palpable unreasonableness may be decided by the court as a matter of law." *Id.* (quoting *Maslo*, 787 A.2d at 965).

Here, Snead has not shown that Atlantic City's conduct was palpably unreasonable. The City employs Boardwalk inspectors who inspect the lengthy Boardwalk daily and for several hours to locate hazards. [Bally's SOMF ¶¶ 6-7.] In addition, the City employs carpenters assigned to various sections of the Boardwalk to make repairs. [*Id.*] Besides the inspectors and carpenters, Atlantic City instructs its police officers and other employees to report observed defects on the Boardwalk. [*Id.*]

Courts have refused to find a public entity acted palpably unreasonable to safeguard against defects on a boardwalk where the entity employed a similar boardwalk inspection program. *Clark*, 2022 WL 3205805, at *6 (finding substantially similar inspection program for boardwalk "not palpably unreasonable"); *see also McCleary*, 2011 WL 1630822, at *9 (ruling City's maintenance of the boardwalk not palpably unreasonable where "the record

reflects that the City employed a construction crew to conduct daily inspections and repairs of the boardwalk").  Indeed, as the *Charney* court recognized long ago:

> Even assuming . . . Wildwood had notice of the hole, it cannot be said that the decision to leave a one and one-half inch deep, one and one-quarter inch wide triangular hole unrepaired was palpably unreasonable.  At worst, the decision to leave small boardwalk defects unrepaired was negligent.  Indeed, Wildwood . . . arguably could have made more thorough and effective repairs of the boardwalk. Perfection, however, is not required under the Tort Claims Act.  Wildwood made daily inspections of the boardwalk and repaired those defects it deemed sufficiently hazardous. . . . Wildwood's failure to remedy a small defect in a walkway surface cannot be said to constitute the kind of "outrageous" or "patently unacceptable" behavior that rises to the level of palpable unreasonableness.  Imperfections in boardwalk surfaces are commonplace, and the failure of a public entity to remedy every small defect in a boardwalk simply cannot be deemed palpably unreasonable.

732 F. Supp. 2d at 458.

Snead also presents no evidence of similar trips and falls in the area she fell that should have altered Atlantic City to inspect the area more thoroughly.  *Carroll v. N.J. Transit*, 841 A.2d 465, 471 (N.J. Super. Ct. App. Div. 2004) (finding plaintiff "presented no jury question" on palpable unreasonableness because "the record is devoid of any evidence of a history of similar incidents or complaints, or a demonstrable pattern of conduct or practice to suggest the need for a more frequent inspection schedule").  Indeed, Snead "offer[s] nothing that the City received reports of defects and failed to respond." *McCleary*, 2011 WL 1630822, at *9. So Snead's claims against Atlantic City fail, and accordingly, the Court grants the City's summary judgment motion.

## V. BALLY'S DUTY TO MAINTAIN AND REPAIR THE BOARDWALK

To prevail on her negligence claim, Snead must show:  (1) Bally's owed her a duty of care; (2) Bally's breached that duty; (3) Bally's breach proximately caused her injury; and (4) damages.  *Townsend*, 110 A.3d at 61.  A plaintiff's failure to establish "any one of these elements is grounds for summary judgment."  *V.C. by Costello v. Target Corp.*, 454 F. Supp. 3d 415, 423 (D.N.J. 2020).

Courts resolve whether a party owed another a duty of care.  *Strachan v. John F. Kennedy Mem'l Hosp.*, 538 A.2d 346, 349 (N.J. 1988) ("[T]he question of whether a duty exists is a matter of law properly decided by the court[.]").  To determine whether to recognize a duty, New Jersey courts look to "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution."  *Est. of Narleski v. Gomes*, 237 A.3d 933, 946-47 (N.J. 2020) (quoting *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1116 (N.J. 1993)).  Ultimately, whether a party owes another a duty of care is a "question of fairness."  *Hopkins*, 625 A.2d at 1116 (quoting *Weinberg v. Dinger*, 524 A.2d 366, 374 (N.J. 1987)).

Overtime, New Jersey courts have imposed a duty of care on commercial proprietors to make public walkways, like sidewalks, safe for pedestrians.  *See, e.g.*, *Stewart v. 104 Wallace St., Inc.*, 432 A.2d 881, 887 (N.J. 1981) (holding "commercial landowners are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so."); *Pareja v. Princeton Int'l Props.*, 252 A.3d 184, 189-191 (N.J. 2021) (collecting cases imposing duty of care on commercial proprietors to remove snow and ice from sidewalks).  Even so, New Jersey courts have been unwilling to impose a duty of care on commercial proprietors to make the

Boardwalk safe. *Horn v. Peanut World Co.*, 837 F. Supp. 701, 705 (E.D. Pa. 1993) (applying New Jersey law and holding commercial proprietor did not owe a duty of care to maintain and repair Atlantic City's Boardwalk); *see also Christoforetti v. Bally's Park Place, Inc.*, 2021 WL 3879074, at *7-8 (D.N.J. Aug. 31, 2021) (noting that "[u]nder New Jersey law, Atlantic City is exclusively responsible for maintenance of the Boardwalk" and explaining that if commercial proprietor did not own the area of the Boardwalk where plaintiff fell, then the proprietor did not owe plaintiff a duty of care); *Pote*, 986 A.2d at 688-89 (finding commercial proprietor did not have a duty to remove snow and ice from the Boardwalk).

In *Horn* (and like Snead here), the plaintiff tripped on a raised nail on the Boardwalk as she left a commercial store. 837 F. Supp. at 702. The plaintiff sued the store for her injuries claiming the store negligently inspected, maintained, or repaired the Boardwalk, and owed her a duty of care to make the Boardwalk safe. *Id.* In granting the store's summary judgment motion, and dismissing the plaintiff's claims, the *Horn* court found that the store did not have a duty to maintain the Boardwalk and refused to equate the Boardwalk with a sidewalk. *Id.* at 703-05. In doing so, the court found that Atlantic City took on the exclusive responsibility to maintain the Boardwalk. *Id.* at 703-04. As the court explained:

> Because the Boardwalk, unlike a sidewalk, is a City-owned public park which Atlantic City tightly controls and strictly regulates, we do not believe that it qualifies as a common sidewalk. The maintenance duties for the Boardwalk are exclusively in the hands of the City. Not only does the City appear conscientiously to maintain the Boardwalk, but given that the abutting store owners are not permitted to place any objects on the Boardwalk, or drive any vehicles there without a permit, it would be difficult, if not impossible, for those owners to perform repairs in the area. As stated above, in order to maintain the Boardwalk, the City must not only replace nails that protrude from the boards' surface, but it must also replace rotted and dangerous boards, and from time to time perform work on the underlying structures. Store owners could not make

such repairs without the use of vehicles and other equipment, which are prohibited. In sum, Atlantic City has assumed plenary control of all repairs.

*Id.* at 704-05. The *Horn* court also found that fairness did not require the court to recognize a duty of care. *Id.* at 704. The court reasoned:

> We do not believe that our conclusion here disturbs the policy considerations supporting the general *Stewart* rule requiring land owners to maintain their adjacent sidewalks. Our holding does not leave injured parties without a remedy because such people can institute actions against Atlantic City and recover from the City's community fisc. N.J. Stat. Ann. § 59:4-2. Moreover, it is futile to give adjacent landowners the incentive to maintain the Boardwalk adjacent to their properties when the City regulations effectively preclude them from making any repairs. Finally, we see no need to encourage abutting landowners to maintain the Boardwalk when Atlantic City has in the deed acquiring the property taken upon itself full responsibility for the maintenance of what is a priceless civic asset over which Atlantic City believes a public monopoly best serves its citizens.

*Id.* at 705.

Here, like *Horn*, all agree that Atlantic City owns and controls the raised board that Snead tripped over. The record reflects that Atlantic City has the exclusive responsibility to maintain the Boardwalk, and in fact, routinely inspects the Boardwalk for defects and repairs it. Like the *Horn* court, this Court too finds Bally's did not owe Snead a duty of care because there is no dispute that Bally's did not own the raised board that she tripped over. 837 F. Supp. at 705; *see also May v. Atlantic City Hotel*, 128 F. Supp. 2d 195, 201 (D.N.J. 2000) (denying to impose a duty on defendant hotel for a defective ramp created by Atlantic City because "[p]lacing a duty on a party that can only fix the defect—here, the hotel—may

provide the wrong incentives to the party that can avoid the defect altogether.").[4] Thus, the Court grants Bally's summary judgment motion, and dismisses Snead's claims against it.

## VI.   CONCLUSION

For the above reasons, the Court **GRANTS** Atlantic City's summary judgment motion (Docket No. 27), **GRANTS** Bally's summary judgment motion (Docket No. 30), and **DENIES** Snead's cross-motions for summary judgment (Docket Nos. 36-37).

An accompanying Order of today's date shall issue.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

Dated: October 31, 2023

---

[4] That Bally's repaired the raised board is irrelevant.  That evidence is inadmissible as a subsequent remedial measure under Rule 407 of the Federal Rules of Evidence.  *Foder v. Port Auth. Trans Hudson Corp.*, 2017 WL 1821101, at *3 (D.N.J. May 5, 2017).  Despite Snead's contrary argument, *see* Snead Br. II at 19-20, Rule 407's exception allowing evidence of subsequent remedial measures to establish ownership or control is inapplicable because Atlantic City's ownership of the raised board is not disputed.